VONDER HAAR CONCRETE COMPANY, Plaintiff,

v.

EDWARDS–PARKER, INC., et al., Defendants,

AAA Excavating, Inc., et al., Appellants,

Carondelet Savings & Loan Association et al., Respondents.

No. 37830.

Missouri Court of Appeals, St. Louis District, Division 2.

Jan. 3, 1978.

Lowell C. McGowen, Frederick W. Shultz, Clayton, for appellants.

Klamen, Summers & Compton, Marvin Klamen, Maureen Swihart, Clayton, for respondents.

REINHARD, Judge.

This is an appeal from an order of the circuit court dismissing an equitable mechanic's lien suit for failure of appellants and other claimants to prosecute their claims. The case has a protracted history[1] and involves numerous litigants (113 parties and 22 lawyers or law firms). The principal parties to this appeal are appellants AAA Excavating, Inc., Affton Tile Co., and United Lumber Co., each a cross-claimant below, and respondent Carondelet Savings and Loan Association, cestui que trust and a defendant below, as well as various other landowners and lenders.

The suit, asserting separate mechanics' liens on twenty-eight (28) lots in Tam O'Shanter Subdivision, was instituted on November 2, 1964 by plaintiff Vonder Haar Concrete Co. Shortly thereafter, on December 9, 1964, appellant United Lumber Co. filed its cross-claim. On January 11, 1965 appellant Affton Tile Co. filed its answer to plaintiff's petition and a cross-claim, as did appellant AAA Excavating Inc. on January 14, 1965. The cross-bills asserted mechanics' liens on some or all of the lots which were the subject of the original petition.

---

1. The Statement of Facts, detailing the history of this case, comprised 14 pages of appellants' brief and was accepted by respondent, with a few additions.

On February 5, 1965, respondent Carondelet Savings and Loan Association, and others, requested and were granted until February 26, 1965 to plead to the petition of plaintiff and the cross-bills of appellants Affton Tile Co. and AAA Excavating, Inc., and others. These pleadings were not forthcoming; rather, on April 2, 1965 respondents Carondelet Savings and Loan Association and W. Dwight Schubel, as trustee, filed separate Motions to Dismiss the cross-bills of appellants United Lumber Co., Affton Tile Co., and AAA Excavating Inc. Their Motions to Dismiss plaintiff's petition was filed later, on June 11, 1965.

For reasons not fully explained in either the briefs or the record, no action was taken on these Motions, or in the case generally, until February 13, 1967. On that date, respondents Carondelet Savings and Loan Association and W. Dwight Schubel filed notice to call up the Motions to Dismiss for hearing on February 17, 1967. On February 17, 1967, the Motions were passed to March 10, 1967, and again continued on two subsequent occasions. The final disposition of these Motions, if any, is not reflected in the record.

After approximately twelve months, during which the proceedings came to another inexplicable standstill, a pre-trial conference was set and held on June 5, 1968.[2]

On June 25, 1968 respondents Carondelet Savings and Loan Association and W. Dwight Schubel, and other defendants, filed their Answer to the cross-bill of appellant AAA Excavating Inc., which cross-bill had been filed more than four years previously. That same date, respondent Carondelet, et al., requested and were granted thirty (30) days additional time to plead to certain cross-bills.[3]

The next entry in the court's file was dated September 2, 1970, at which time respondent Carondelet, et al., by leave of court, filed their Answer to plaintiff's Petition.

A two and one-half year period of unexplained inactivity elapsed, and on April 30, 1973, the court's minute entry shows that the case was set for trial on June 11, 1973. However, on June 8, 1973 a law firm entered its appearance as attorneys for certain defendants, who, on June 11, 1973 requested and were granted thirty (30) days additional time to plead. Thereafter, on December 17, 1973 these defendants filed a Motion to Dismiss the action for failure of the lien claimants to prosecute their claims without unnecessary delay, together with a memorandum in support thereof. The motion was formally adopted by several other defendants, including respondent Carondelet, and following a hearing, it was overruled on February 8, 1974, by Judge Rickhoff.

The case then was set for trial for March 12, 1974, but that setting was precluded by the filing of a Petition for Writ of Prohibition with this court by respondent Carondelet and others. The petition was denied April 12, 1974.

It is important to note that prior to the filing of the Petition for Writ of Prohibition, appellant Affton Tile Co., on January 17, 1974 was granted a default judgment against various defendants, including respondent Carondelet. At this point, a law firm which represented other parties in the case entered its appearance for respondent Carondelet and on behalf of respondent, successfully moved the court on January 22, 1974, for an order vacating and setting aside the default judgment. On behalf of respondent the firm filed an Answer to the cross-bill of appellant Affton Tile Co. on January 23, 1974, and an amended answer to the cross-bill of appellant United Lumber Co. on January 24, 1974.

On January 23, 1974 another lawyer also entered an appearance for respondent Car-

---

2. On June 19, 1966, Leo Shakofsky filed two additional mechanic's lien suits involving some of the property affected by this case. These cases were ordered consolidated with the instant case on May 17, 1968 which further complicated and frustrated its progress.

3. Respondent Carondelet, et al., did not file Answers to the cross-bills of appellants Affton Tile Co. and United Lumber Co. until January, 1974.

ondelet, and that same date was granted thirty (30) days additional time to file a separate Answer to the cross-bill of appellant Affton Tile Co. This Answer was filed February 8, 1974.

On January 22, 1974 attorneys for appellants AAA Excavating, Inc. and United Lumber Co. notified all parties and attorneys that a pre-trial conference was set for February 1, 1974. The conference was twice continued by the court. On February 25, 1974, the court set the case for trial. After the March 12, 1974 trial date was rendered ineffective by respondent Carondelet's Petition for Writ of Prohibition, appellants AAA Excavating, Inc. and Affton Tile Co. requested a new trial setting. The case again was set for trial June 3, 1974.

Respondent Carondelet initiated discovery on May 20 and May 21, 1974, with the submission of interrogatories to be answered by, among others, appellants AAA Excavating, Inc., Affton Tile Co., and United Lumber Co. Answers to interrogatories were filed by appellants on May 31 and June 3, 1974.

The case proceeded to trial on June 3, before Judge Rickhoff, and evidence was presented. On the following day, the attorney for respondent Carondelet requested a continuance, and an opportunity to force discovery, because he had not received answers from all parties to whom interrogatories had been submitted. The case was continued over appellants' objection, was reset for October 7, 1974. On June 28, 1974 appellants filed a Petition for Writ of Mandamus with the Missouri Court of Appeals, St. Louis District, requesting that the Court of Appeals order the Circuit Court to hear the case on that date. Petition was denied.

The case did not go to trial October 7, 1974, and was transferred to another division of the St. Louis County Circuit Court. Between June, 1974 and March, 1975 various motions were filed and argued by several parties, and other proceedings occurred.

On March 18, 1975, the case was assigned to Division 8 and on March 19, 1975, the attorney for appellants notified all parties and attorneys that the case was set for trial on April 21, 1975, the pre-trial conference to be held on April 17, 1975. A Motion to Withdraw as attorney for all parties but Carondelet was filed by one of the attorneys on April 17, 1975. The procedure surrounding this motion disturbed the April 21 trial setting.

On May 30, 1975 respondent Carondelet filed an Amended Answer to plaintiff's petition and to, inter alia, the cross-claims of appellants. The case apparently was set for trial on June 30, 1975, although the record does not reflect this setting. On June 10, 24 and 27, 1975 respondent Carondelet initiated further discovery, including supplemental interrogatories. Once again, on June 30, 1975, the case was indefinitely continued.

Sometime thereafter, the case was set for trial on December 18, 1975. On December 16, 1975 respondent Carondelet filed a memorandum incorporating and reasserting the Motion to Dismiss filed by certain defendants on December 17, 1973, which motion, as noted above, had been overruled. Taking judicial notice of its own file, the court, on December 18, 1975, sustained the motion on the basis of claimants' failure to prosecute their claims without unnecessary delay. The court cited four periods since 1964 during which no minute entries appear in the court's file, stating "that from July 13, 1965 until February 13, 1967 there was no action at all in the case . . . That between the period September 7, 1967 and April 19, 1969, a second period of nineteen months that the minute entries reflect no action in the case, . . . from June 25, 1968 to May 22, 1970, a period of twenty-three months, . . . there was no action, . . . and from September 1, 1970 to March 9, 1973, a period of thirty months, . . . no action was taken . . . ." From this order of dismissal, appellants take their appeal.

■ The general rule is that courts have inherent power, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute. *Euge v. Lemay Bank & Trust Co.,* 386 S.W.2d 398, 399

(Mo.1965). In an equitable mechanic's lien suit, however, the trial court need not resort to its inherent power to dismiss for failure to prosecute because the duty to prosecute such action without unnecessary delay is expressly cast upon the plaintiff, and defendants-claimants, by statute. §§ 429.170, 429.310, RSMo.1969. Despite the omission from § 429.310 of the language "and prosecuted without unnecessary delay," which language is set forth in § 429.-170, we find no reason, in law or logic, to require a different standard regarding the duty to prosecute as between a legal and equitable mechanic's lien action. *See Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651, 662[8] (Mo. 1970).

In an equitable mechanic's lien action, one of many claimants may bring the action and designate all other claimants, as well as the contractor and owners, defendants. The claimants, although designated as defendants by virtue of the statute, § 429.280, stand in the position of the plaintiff, and it is as much their duty as that of the plaintiff to prosecute the action without unnecessary delay. *Wiles-Chipman Lumber Co. v. Pieper,* 176 S.W.2d 50, 53 (Mo.App. 1943).

The statutory limitation applicable to mechanic's lien actions is not absolute and reserves some discretion in the trial court. Thus the court's action dismissing the case for failure to prosecute without unnecessary delay will not be disturbed on appeal unless the discretion of the trial court has been abused. *Peerless Supply Co. v. Industrial Plumbing & Heating Co., supra.* On appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and the burden of showing abuse of discretion is on the appellant. If the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the trial court abused its discretion. *Shirrell v. Missouri Edison Co.,* 535 S.W.2d 446, 448 (Mo.banc 1976). Guided by this standard of review, we find

the court below abused its discretion in sustaining the Motion to Dismiss.

The motion sustained by the trial court in this case was merely a reaffirmation of the motion presented and overruled two years previously. A hearing on the first motion was conducted, but presentation of evidence was not permitted on the second motion. The only evidence considered by the court before ruling on the motion was the recorded minute entries in its own file.

While the minute entries indicate that a period of twelve years transpired between the time of filing of the Petition and the time of the Order of Dismissal, and reflect rather extended lapses in the litigation throughout that period, they fail to delineate the reasons for the protracted nature of this case, and the specific causes of the interim delays. Mere delay, however lengthy, is not sufficient grounds for dismissal. It is only unnecessary delay that is prohibited. *Peerless Supply Co. v. Industrial Plumbing & Heating Co., supra; Fuhler v. Gohman & Levine Const. Co.,* 142 S.W.2d 482 (Mo.1940). The record before the trial court provided no evidence whatsoever as to what caused the delays, or that the delays were unnecessary. Nor was any such evidence offered in support of the second motion. Certainly, the bare allegations of fact in the second motion, a mere incorporation and reaffirmation of the earlier motion, did not and would not prove themselves. *Wiles-Chipman Lumber Co. v. Pieper, supra; Julius Seidel Lumber Co. v. Hydraulic Press Brick Co.,* 288 S.W. 979, 981 (Mo.App. 1926).

The court's ruling was predicated on a history of inactivity occurring more than two years prior to the ruling. The periods of delay cited by the judge in his order had occurred prior to the time Judge Rickhoff issued his order overruling the first motion to dismiss. Thus the circumstances which led the court below to dismiss the case were the same circumstances before Judge Rickhoff when he ruled on the first motion to dismiss. Judge Rickhoff should have possessed a more intimate knowledge of the case and been in better position to judge

the issue of unnecessary delay based on occurrences in the case prior to his ruling. *See Peerless Supply Co. v. Industrial Plumbing & Heating Co., supra* at 663.

Moreover, the judge did not consider developments in the case subsequent to Judge Rickhoff's ruling. The case went to trial in June, 1974; trial was recessed and the case was continued over the objection of appellants. Thereafter, the trial was reset several times at the instance of appellants, and there is no indication that trial was delayed at their request. December 18, 1975 was the last trial setting. Several respondents filed a motion to dismiss two days before trial, and others adopted the motion the morning of trial. The parties were in court prepared to try the case at the time of the court's ruling, and the final order was filed the next day.

This timing of the order dismissing the action is significant, and in this regard, the reasoning of the court in *State ex rel. State Highway Commission v. Graeler,* 495 S.W.2d 741, 743 (Mo.App.1973), although applied in a different context is apropos:

"[W]e must determine the status of a dismissal upon motion of the defendant for failure to prosecute as of the time the motion to dismiss was made and not on occurrences which happened prior thereto."

We are not suggesting that such a rule be applied absolutely in equitable mechanic's lien cases where the issue is unnecessary delay, but certainly the timing of a motion and order to dismiss is a factor to be considered in determining whether there has been an abuse of discretion.

Nothing in this opinion should be interpreted in a way as to diminish our support of the role and responsibility of trial judges in moving cases expeditiously. We cannot, however, subscribe to the action of the trial court in this case in dismissing it for failure to prosecute on the day of trial, based on remote, albeit extended, periods of inactivity.

To the extent delays in the case are attributable to the sheer multiplicity of parties, they cannot be deemed unnecessary. In this equitable mechanic's lien action involving dozens of parties with an interest in the subject property, delay in the final determination of the cause has been occasioned by several factors, including consolidation with other cases, numerous cross-bills, motions, settings for hearings, continuances, extensions of time to plead, as well as discovery procedures and new appearances and withdrawals of attorneys. Indeed, on several occasions, movant Carondelet requested extensions of time to plead and failed to plead with the period of the extension, and as late as 1974 and 1975, more than ten years after the petition was filed, Carondelet filed Amended Answers. At one point, in January, 1974, a default judgment was taken against various defendants, including Carondelet, and was subsequently set aside. These are additional considerations which bear on the question of whether the lien claimants should be charged with unnecessary delay.

Based on the aforegoing, we reverse and remand the case for trial.

STEWART, P. J., and DOWD, J., concur.